CHARLESTOWN.

An election, effected at a balloting which commenced after sunset, was held void, under the act of 1839, c. 42, § 3.

The act of 1843, c. 94, in addition to the act of 1839, c. 42, "concerning elections," did not repeal the third section of the latter.

A vote to dissolve a meeting having been doubted, and the doubt settled by a show of hands, the vote was again declared in the affirmative, the meeting not objecting to this mode of settling the doubt. The doubt being again renewed, the presiding officer put the question a third time, and declared it to be decided in the negative, upon a count of the voters present taken by him. It was held, that an election which took place after this proceeding, was not thereby invalidated.

THE election of Freeman F. Tilden, Richard Frothingham, Jr., Abraham Rand, and Philip B. Holmes, members returned from the town of Charlestown, was controverted by Henry P. Fairbanks and 270 others, voters of that town, on certain grounds stated in their petition; in reference to which, the committee on elections, to whom the case was referred,[1] reported as follows[2] :—

"The facts in the case are these: A meeting was held on the second Monday of November last, for the purpose of choosing representatives; the poll was opened at 9, A. M., and closed at 4, P. M.; 1532 votes were cast; necessary for a choice, 767; said Tilden received 712; said Frothingham received 689; said Rand received 229; and said Holmes received 761. After the above vote had been declared, the meeting was dissolved.

Notice was then given that a second meeting would be held on the 27th of November last, at 12 o'clock, M.

This meeting was called to order and the warrant was read, when a motion was made to dissolve the meeting, which was voted in the affirmative, 78 to 63. The vote was doubted, and the motion was again put, and the result was declared, 160 votes in favor of and 88 votes against dissolving the meeting; which last vote was also doubted by eleven persons, and to make the vote certain, it was taken by counting the voters for and against dissolving the meeting, as they passed the presiding officer; the result of which was, 335 votes in favor of, and

[1] 66 J. H. 51.　　　　[2] Same, 160.

358 votes against, dissolving the meeting. The poll was then opened, and kept open until 7 o'clock, P. M. The whole number of ballots cast was 1501 ; necessary for a choice, 751 ; said Tilden received 716 ; said Frothingham received 705 ; said Rand received 711 ; and said Holmes received 722 votes.

After the result of the last balloting had been declared, at 15 minutes of 8 o'clock, P. M., it was voted to proceed to another ballot for the choice of four representatives. The poll was forthwith opened, and kept open for the space of two hours, by a vote of the town. The whole number of votes cast at this balloting was 1060 ; necessary for a choice, 531 : said Tilden received 569 ; said Frothingham received 567 ; said Rand received 567, and said Holmes received 573 votes.

The circumstances, relied upon by the petitioners to prove that the meeting was dissolved, are, that the vote was taken and declared in the affirmative, and was immediately doubted, but no one called for the polling of the house, or a division of the meeting. The chairman, to settle the doubt, counted the hands, and again stated the vote to be in the affirmative. And it is contended, that by this last act, the meeting consented to this mode of settling the doubt, and that afterwards no one had a right to call for a polling of the house. The committee are of the opinion, that there was nothing in this proceeding which should render the election void.

As to the matter of voting without the check list being used, it was given in evidence by several witnesses, that some twenty or thirty persons, whose names had not been checked, cast pieces of paper, apparently votes, into the box. It was not given in evidence, who either of the persons so voting were, or that any person voted more than once, at the same election. Several of the selectmen, and the constables on the other side, were as sure that no pieces of paper or votes were cast into the box, until the names of the voters had been checked. The committee are of the opinion, that the petitioners have not made out this point of their case.

The third allegation, which the committee think proper to notice, is one of general irregularity on the part of the meeting.

A motion was made to dissolve the meeting, after the result of the balloting, which terminated at 7 o'clock, had been declared, which created a great deal of disturbance. The meeting became disorderly in the extreme, and scenes were acted, under cover of the night, which the persons engaged in them would have been ashamed to have been engaged in, in the day time. But the committee are of opinion, that however reprehensible the conduct of a portion of the citizens might have been in this respect, yet as there was no irregularity in the voting, the seats of the sitting members for this cause should not be declared vacated.

The committee now come to the fourth, and, in the opinion of a majority of them, to the only reason why the seats of the sitting members should be declared vacated, which is, that at the ballot by which the sitting members claim to have been elected, (a previous one held on the same day having resulted in no choice,) the poll was not only continued open after sunset, but was opened, and the whole proceedings were had, after that time, contrary to the provisions of the third section of the forty-second chapter of the act passed March 9, 1839.

The second section of said act provides, that ' The warrant for notifying any such meeting shall specify the time or times when the poll for the choice of the several officers shall be opened; and the same shall be kept open at least two hours, and for such longer time as a majority of the voters present shall by vote direct; but the poll at all such elections shall be closed by sunset of the same day.'

The third section provides, that ' When a town, having a right to choose, and voting to choose, more than one representative to the general court, shall elect to choose them separately, the provisions contained in the preceding section, prescribing the time of opening and closing the poll, shall apply only to the choice of the first representative thus chosen; and in any case of balloting for a representative to the general court, if no person is elected on the first ballot, the said provisions shall not apply to any subsequent balloting for such representative on the same day; provided that the poll shall be closed by sunset.'

By the act of 1843, c. 94, passed March 24th, 1843, so much of the second section of the act concerning elections, approved on the 9th day of March, 1839, as provides for closing the polls at sunset on days of election, was thereby repealed.

Just before the balloting commenced, at which the sitting members claim to have been elected, the petitioners called the attention of the meeting to the provisions above recited, by causing the presiding officer to read them to the meeting; and remonstrated against the right of the town to open the poll and proceed to an election after sunset; but the motion to proceed to a ballot for representatives prevailed, and the petitioners, for the most part, left the meeting, and did not vote at said balloting.

A majority of the committee are of the opinion, that the act of 1843, c. 94, does not repeal the third section of the 42d chapter of the acts of 1839, but that the third section of chapter 42, passed 1839, stands now precisely the same as if the act repealing the second section of the act of 1839, chapter 42, had not been passed.

The committee therefore recommend the adoption of the following order :—

Ordered, That the seats of Freeman F. Tilden, Richard Frothingham, Jr., Absalom Rand, and Philip B. Holmes, returned as members from the town of Charlestown, be, and hereby are, declared vacant."

This report was presented to the house[1] on the 30th of January; was agreed to on the 6th of February,[2] by 165 yeas to 125 nays; and the committee on the pay roll directed to make up the pay of the members including that day.[3]

On the 9th of February, a motion that a precept should issue, for a new election in Charlestown, was made and decided in the negative.[4]

[1] 66 J. H. 160.    [2] Same, 186, 190.    [3] Same, 196.    [4] Same, 214.